**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOE SCHROEDER LEGACY, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 20 C 3201 |
| | ) | |
| SERVICE 247 of ILLINOIS, INC. et al., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joe Schroeder Legacy, LLC, f/k/a DRYCO, LLC ("DRYCO"), Joseph Schroeder, Paul Matthews, and John Schroeder have brought claims against Defendants Hanson Law Group, LLP, Thomas Keffer, Elizabeth Nelson, Nelson Group, Inc., Service247 alleging harm to Plaintiffs' business. Plaintiff brings federal claims under 8 U.S.C. §§ 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836 *et seq.*, as well as state law claims for conversion, civil conspiracy, breach of fiduciary duty, aiding and abetting breach of a fiduciary duty, tortious interference with a contract, and professional negligence. For the reasons discussed below, Defendants' Motions to Dismiss [Dkts. 32, 34] are granted as to the RICO and DTSA claims. The Court declines to grant supplemental jurisdiction over Defendants' remaining state law claims.

**BACKGROUND**

The following factual allegations are taken from Plaintiffs' Amended Complaint (Dkt. 30) and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Similarly, in evaluating a motion to dismiss under Fed. R. Civ. P. 23.1, the court accepts as true all of Plaintiff's well-pleaded factual allegations. *See In re Abbott*

1

*Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003); *In re Discover Fin. Servs. Derivative Litig.*, 2015 WL 1399282, at *2 (N.D. Ill. 2015).

The individual Plaintiffs, through their entity DRYCO, founded Specialty Contents Group, LLC ("SCG") in 2015, which helps consumers and businesses restore personal property damaged by fires, floods, or similar calamities. (Dkt. 30 ¶ 2). Defendants Elizabeth Nelson and Thomas Keffer are the CEO and President, respectively, of Claimplus Corporation, a competitor of SCG. (*Id.* ¶ 3). Defendant, David Foreman, is an employee of SCG and was purportedly Nelson and Keffer's "inside man" at SCG. (*Id.* ¶ 3, 55–57). Nelson and Keffer tried unsuccessfully to purchase SCG from DRYCO, and when that failed, they took over management of SCG with the help of Foreman and another individual, James Ko, who is co-owner of SCG. (*Id.*). From there, Defendants began the process of looting SCG of all its value and saddling SCG with unsustainable debts. (*Id.*). In furtherance of their scheme, Nelson and Keffer set up a series of companies to compete with SCG under the name "Service247," including Defendants Service247 of Illinois, Inc. and Service247 of Wisconsin, Inc. (together, "Service247"). (*Id.* ¶ 4). Defendants Hanson Law Group, LLP, Kyle Hanson, and Keith Hanson ("the Hansons"), are SCG's attorneys, but allegedly actively and knowingly assisted Defendants in their raid of SCG, to the detriment of SCG and Plaintiff. (*Id.* ¶ 5).

In 2015, DRYCO formed SCG with Ko, with DRYCO a 50% owner of SCG and Ko's entity called Countryside Cleaners, Inc. ("CCI") owning the other half. (*Id.* ¶ 19). DRYCO contributed 100% of the start-up capital to SCG and provided a space for SCG to maintain its headquarters, although SGC was to re-pay DRYCO for these costs. (*Id.* ¶ 20). Defendants ensured that the obligation to DRYCO was never repaid and instead converted the assets and opportunities of SCG for their benefit by surreptitiously handing them to Claimplus and Service247. (*Id.*).

In February 2017, DRYCO decided that the sole shareholder of CCI (the other Member of SCG), James Ko, would replace the original Manager of SCG, Burgess Watts. (*Id.* ¶ 23). Shortly thereafter, SCG began trending downward both operationally and financially, and subsequently Joe and Paul advised Ko in June 2018 that he should no longer be the Manager of SCG and it was time that Ko and SCG part ways. (*Id.* ¶ 24). In response, Ko instead attempted to leverage powers he believed were granted him in the SCG Operating Agreement to intentionally injure DRYCO and SCG and to create business opportunities for himself and his Defendant co-conspirators. (*Id.*).

In August or September 2018, Keffer approached SCG about purchasing it, but DRYCO was not interested in selling its share, so Keffer approached CCI. (*Id.* ¶ 26). Ultimately, the parties could not reach a deal, so DRYCO and Ko still co-own SCG. (*See id.* at ¶¶ 2, 26). In order to recruit Ko and Foreman into his plan to raid SCG, Keffer allegedly promised Ko and Foreman "something that looks like ownership" in the combined entities. (*Id.*). Keffer and Nelson quickly convinced Ko and Foreman to let them take over major management responsibilities at SCG and engaged in leadership activities. (*Id.* ¶ 27). Since Keffer and Nelson took over management of SCG, it has left numerous creditors unpaid, including vendors and customers with whom DRYCO has longstanding relationships. (*Id.* ¶ 28). Once Keffer and Nelson had taken over management of SCG, they set up Service247 for the purposes of looting SCG and using SCG's assets, customers, employees, and good will to compete against it. (*Id.* ¶¶ 29 – 30). Nelson and Keffer have converted funds from SCG, (*id.* ¶ 32), have caused SCG to divert physical assets, employees, and corporate opportunities to Claimplus and Service24, (*id.* ¶ 33), have former and current SCG employees now report working for Claimplus using vehicles and physical equipment belonging to SCG, (*id.* ¶¶ 34–35), and have "absconded" with SCG's revenue totaling approximately $4.5

millions while failing to pay SCG's debts and taxes. (*Id.* ¶¶ 36–37). The Hanson Law Group, while representing SCG, have colluded with the Defendants in allowing this behavior, in alleged violation of their fiduciary, legal and ethical duties to SCG and harming DRYCO. (*Id.* ¶¶ 40–54).

With regards to Plaintiffs' RICO claims, Plaintiffs allege four predicate acts. Plaintiffs first allege Wire and Mail Fraud 18 U.S.C. § 1343 due to the conversion of property and business opportunities and used email and the U.S. Postal Service to carry out its alleged scheme. (*Id.* ¶ 85). Plaintiffs next allege predicate violations of the National Stolen Property Act 18 U.S.C.A. § 2314 and 2315 (the "NSPA") when Keffer, Nelson, and Foreman caused SCG to wire funds across state lines to an account in Irving, Texas belonging to Defendant. (*Id.* ¶ 86). The third set of predicate violations also arose under the NSPA when SCG also wired transfers to "lawyer," allegedly the Hansons, on October 22; November 2, 8, 16, 23, 30; December 7, 14, 21, 28; and January 4, each of $5,000, and one on August 20, 2019 for $10.140. (*Id.* ¶ 87). As described above, while the Hansons were supposed to represent SCG, they were actually serving as Ko's personal attorney and aiding the transfer of assets and business to Service247 to SCG's detriment. (*Id.*). These predicate acts allegedly violate the NSPA because Defendants knew the funds were procured by fraud. (*Id.*). The fourth set of predicate act also allege Wire and Mail Fraud 18 U.S.C. § 1343 by Nelson, Keffler and Claimplus by conspiring, including through the use of email, to deliberately cause SCG to avoid its federal income tax obligations in 2018 and 2019. (*Id.* ¶ 89).

Plaintiffs have brought previous cases arising from similar allegations in state court. Plaintiffs filed Case No. 2018 CH 9807 on August 1, 2018 and Case No. 2018 CH 10315 on August 15, 2018 in Cook County court. (Dkt. 33-1; Dkt. 33-2). The Cook County court dismissed DRYCO's case and stayed Schroeder's case against Ko pursuant to an arbitration provision in SCG's operating agreement. (Dkt. 33-6 ¶¶ 4, 11-13, 16, 20–29). Schroeder then filed nearly

identical claims against Ko in DuPage County on December 5, 2018. (See Dkt. 33-4, Case No. 2018 CH 001359). DuPage County court transferred the case to Cook County, and the court promptly "entered sanctions against Schroeder, finding that Schroeder engaged in contumacious disregard of this court's authority in staying the matter and *** a blatant attempt to forum shop." (Dkt. 33-6 ¶ 27). After finding state courts unavailing of their claims, Plaintiffs now attempt to bring their claims in federal court.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what...the claim is and the grounds upon which it rests.*" Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At the motion to dismiss stage, the Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Plaintiffs bring claims for alleged violations of RICO, the DTSA, and various state law claims. Plaintiffs bring their RICO and DTSA claims derivatively on behalf of SCG and their RICO claim directly on behalf of DRYCO. However, as discussed further below, Plaintiffs do not have standing to bring these claims and therefore they must be dismissed.

## I.     Derivative Standing on Behalf of SCG

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 23.1, which sets out rules for when a derivative action may be maintained. As relevant here, as a prerequisite, the rule states, "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). Rule 23.1's requirements apply to derivative RICO and DTSA claims. *See Bhaitia v. Vaswani*, No. 18-cv-2387, 2019 WL 4674571, at *1, 9 (N.D. Ill. Sept. 25, 2019) (applying Rule 23.1 to DTSA claim); *Miller v. Fryzel*, No. 12 C 10160, 2014 WL 3509491, at *5 (N.D. Ill. July 15, 2014) (applying Rule 23.1 to RICO claim).

Case law as to what constitutes adequate representation is admittedly sparse in this Circuit. Wright & Miller is instructive in delineating some of the considerations:

> Many of the factors that are considered when determining adequacy of representation in a class action under Rule 23 also apply in the context of derivative suits. Perhaps the most important element to be considered is whether plaintiff's interests are antagonistic to those plaintiff is seeking to represent. If there is a conflict of interest, the representation may well be deemed inadequate and the suit dismissed. Of course, a purely hypothetical dispute will not necessitate dismissal. Defendant must show that a serious conflict exists and that plaintiff could not be expected to act in the interests of the other shareholders because doing so would harm the plaintiff's other interests

Wright & Miller, 7C Federal Practice and Procedure § 1833 (3d. ed.). Whether a particular plaintiff will fairly and adequately represent the interests of other similarly situated shareholders as required by Rule 23.1 turns upon the facts and circumstances of each case. *Rotherbeg v. Security Management Co., Inc.*, 667 F.2d 958, 961 (11th Cir. 1982). "An adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from

economic interests that are antagonistic to the interests of the class." *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990).

Here, Plaintiffs would not fairly and adequately represent SCG as Plaintiffs have sued SCG and James Ko, the other shareholder in SCG, three times in state court, as well as suing CCI, the other shareholder entity, once. (See Dkt. 33-1 (Plaintiffs suing James Ko and SCG for approximately $290,0000); Dkt. 33-2 (Plaintiffs suing James Ko and his company CCI asking that James Ko and CCI be expelled from SCG); Dkt. 33-3 (Plaintiffs suing SCG for approximately $837,200); Dkt. 33-4 (Plaintiffs suing SCG for approximately $207,900).

This would appear to be an insurmountable conflict of interest and courts that have confronted a similar scenario, where the plaintiffs in a derivative suit have directly sued the corporation previously, have routinely held that the plaintiffs cannot fairly and adequately represent the corporation. "Antagonistic interests sufficient to warrant disqualification may exist where the named plaintiff is involved in separate litigation with the defendant corporation or its directors . . . or where the named plaintiff has a personal dispute with the defendant directors." *DeLeo v. Swirsky*, No. 00 C 6917, 2002 WL 989526, *3 (N.D. Ill. May 14, 4 2002); *see also Puri v. Khalsa*, 674 Fed. Appx. 679, 683 (9th Cir. 2017) (discussing how the plaintiffs' suits against defendant corporations indicated economic antagonism and vindictiveness against defendants); *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987) (stating, in the class action context, which Rule 23.1 follows, "[w]hen a plaintiff brings a derivative suit seeking recovery for the corporation and simultaneously files a . . . suit for damages against that same corporation, there is an inherent conflict.")

Plaintiffs rebuff these arguments by citing case law where plaintiffs bring direct and derivative suits simultaneously. Indeed, is well-settled that shareholders have the right to bring

direct and derivative actions simultaneously. *Srebnik v. Dean*, 05–cv–01086–WYD–MJW, 2006 WL 2457386, * 2 (D. Colo. Aug 22, 2006) (citing *Moffatt Enterprises, Inc. v. Borden Inc.*, 807 F.2d 1169, 1176 (3d Cir.1986). But none of their cited cases support the proposition that they can serve as adequate representation when they have sued SCG directly, as well as the other shareholder, multiple times, for hundreds of thousands of dollars. The fact that Plaintiffs have repeatedly sued SCG and the other shareholders for claims arising out of the same events indicates there is no feasible means that they could adequately represent SCG due to the inherent economic conflict as well as the antagonism Plaintiffs have demonstrated for SCG. Plaintiffs' derivative claims on behalf of SCG are dismissed with prejudice.[1]

## II.     Standing on Behalf of DRYCO

Plaintiffs also bring their RICO claims on behalf of DRYCO. As relevant here, a RICO claim may only be brought by "person injured in his business of property by reason of a violation of section 1962" has standing to sue under RICO. 18 U.S.C. § 1964(c). With regards to a RICO claim brought by a shareholder, "[i]f the shareholders' injury resulted directly from an injury to the corporation, but only indirectly from the harm the wrongdoer wreaked upon the corporation, the RICO claim belongs to the corporation, and not the shareholder." *Levine v. Prudential Bache Props., Inc.*, 855 F. Supp. 924, 939 (N.D. Ill. 1994) (citing *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990); *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989)). "The same reasoning applies to limited partnerships, and federal courts have applied the foregoing rule to them as well." *Id*

Plaintiffs' pleadings indicate have only alleged a harm cognizable under RICO to SCG. In fact, Plaintiffs do not even mention DRYCO in their RICO allegations, besides two conclusory

---

[1] The Court also notes that Plaintiffs did not verify their Complaint as required under Rule 23.1, however this would be grounds for re-filing an amended complaint and not dismissal. *Bhaitia v. Vaswani*, No. 18-cv-2387, 2019 WL 4674571, at * 9 (N.D. Ill. Sept. 25, 2019)

statements that Defendants engaged in "a scheme to convert physical assets and funds belonging to SCG and DRYCO for the benefit of their new business venture Service247," (Dkt. 30 ¶ 84), and that "[a]s a direct and proximate result of the foregoing, SCG and DRYCO were harmed by Defendants' conduct." (*Id* ¶ 92).

Rather, Plaintiffs' allegations make clear that the only harm alleged was to SCG. In particular, Plaintiffs plead that "Defendants worked together and created an entity, Service247, for the express purposed of defrauding SCG." (*Id*. ¶ 83). In describing the first set of predicate acts, Plaintiffs plead "after infiltrating SCG and taking over management, Keffer and Nelson caused Service247 to convert vehicles and equipment owned by SCG located in Dallas and Madison. SCG has an immediate right to possession of these trucks and equipment. Likewise, Keffer and Nelson caused Service247 to convert the restoration equipment of SCG located in St. Louis. SCG has an immediate right to return of this equipment. Likewise, Keffer and Nelson each caused Service247 to convert business opportunities of SCG in each of these location." (*Id*. ¶ 85). Under the second set of predicate acts, Plaintiffs allege "…Keffer, Nelson, and Foreman caused SCG to wire funds across state lines to an account in Irving, Texas belonging to Defendant, the Nelson Group…" (*Id*. ¶ 86). Under the third set of predicate acts, Plaintiffs plead, "…SCG paid the Hansons $5,000 per week between October 22, 2018 and January 4, 2019. As described above, while the Hansons were supposed to represent SCG, they were actually serving as Ko's personal attorney and aiding the transfer of assets and business to Service247 to SCG's detriment." (*Id*. ¶ 87). Under the fourth set of predicate acts, Plaintiffs allege "…Nelson, Keffer, and Claimplus violated 18 U.S.C. § 1343 (wire fraud) by conspiring, including through the use of email, to deliberately cause SCG to avoid its federal income tax obligations in 2018 and 2019. In short, they fraudulent caused SCG not to pay its taxes." (*Id*. ¶ 89).

These allegations illustrate that the only harm alleged is to SCG, whom Plaintiffs do not have standing to represent. Here though, the "type of injury, the looting of a company, also does not confer individual standings," and so Plaintiffs cannot make out standing to show a RICO injury to DRYCO. *Irish v. Fergus*, 970 F. Supp. 2d 317, 349 (M.D. Pa. 2013) (individual member of real estate limited liability company did not have standing to bring civil RICO claims since injury was derivative of harm to LLC); *see also Ball v. Field*, No. 09 C 4383, 1992 WL 57187, at *9 (N.D. Ill. Mar. 19, 1992) (dismissing partner's individual RICO claims that belonged to the affected limited partnership entities). Plaintiffs point out that at times courts have allowed individuals whose corporations have been harmed to sue. For example, they cite, *LaFlamboy v. Landek*, 587 F. Supp. 2d 914, 936 (N.D. Ill. 2008), where the court held that a 50% owner of a corporation had standing to bring a RICO claim where he was "individually singled out and swindled." But that type of injury not alleged here. There is no RICO injury alleged to DRYCO, aside from conclusory statements that they have been harmed. Therefore, DRYCO's RICO allegations are dismissed without prejudice.

### III.   State Law Claims

This leaves only state law claims. Having dismissed the only federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).

## CONCLUSION

Because Plaintiffs cannot bring a lawsuit on behalf of SCG and they have failed to plead standing for DRYCO's RICO claim, Defendants' Motions to Dismiss [Dkts. 32, 34] are granted. The claims on behalf of SCG are dismissed with prejudice. Plaintiffs are granted leave to amend the remainder of their Complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

Virginia M. Kendall
United States District Judge

Date: January 19, 2021